```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  THORNTON TOMASETTI, INC.,
                                     Plaintiff,
                                                                   14-CV-7040 (JPO)
                    -v-
                                                                   OPINION AND ORDER
  ANGUILLAN DEVELOPMENT CORP. and
  CUISINARTS CORP.,
                                     Defendants.
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Defendants Anguillan Development Corp ("ADC") and Cuisinarts Corporation ("Cuisinarts") move to dismiss or, in the alternative, to stay this contract action filed by Plaintiff Thornton Tomasetti, Inc. ("TT") pending the outcome of a previously filed action in an Anguillan court. Defendants also seek to dismiss TT's claims against Cuisinarts, and TT requests leave to amend its complaint to substitute Cuisinarts with Conair Corporation ("Conair"). For the reasons that follow, the Court dismisses the claims against Cuisinarts, denies TT's request for leave to amend its complaint, and grants ADC's motion for a temporary stay of this case.

I.   Background

  A.   Facts

For the purposes of this motion to dismiss, the Court assumes as true the facts as alleged in the Complaint and the brief filed by TT, the non-moving party. *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 91 n.1 (2d Cir. 2006) (Lynch, J.). Plaintiff TT is a corporation headquartered in Manhattan. (Dkt. No. 1 ("Complaint") ¶ 2.)

1

Defendant ADC is an Anguillan corporation. (*Id.* ¶ 3.) Defendant Cuisinarts no longer exists as a corporate entity, having merged with Conair in 1993. (Dkt. No. 25 at 9.)

In early 2012, ADC entered into two contracts with TT, both related to a boutique hotel in Anguilla. (Complaint ¶¶ 9, 18.) The first contract, an Owner's Representative Agreement, obliged TT to act as ADC's project manager and representative in exchange for monthly payments from ADC. (Dkt. No. 25 at 2.) Specifically, ADC agreed to pay TT $5,000 per month from January 1, 2012 to December 31, 2012, and $1,667 per month from January 1, 2012 to December 31, 2013. (*Id.* at 3.) The second contract between ADC and TT, a Structural Engineering Agreement, required TT to perform certain "structural and site/civil engineering services" for the project in exchange for fees totaling $385,000, plus additional fees and expenses as they occurred. (*Id.*)

According to ADC, it sued TT for breach of contract and negligence in the Anguilla Circuit Court on May 19, 2014. (Dkt. No. 20 at 4.) In that claim, ADC alleges that TT failed (1) to supervise the project adequately, (2) to ensure that the project was on track to meet budget constraints, and (3) to hold the project to ADC's approved design and construction costs. (*Id.* at 4-5.) ADC seeks $1,846,566 in damages, including repayment of $126,673 already paid to TT under the Owner's Representative Agreement and $200,182 paid under the Structural Engineering Agreement. (*Id.* at 5.) On October 3, 2014, TT filed motions to dismiss the case based on *forum non conveniens* or, in the alternative, for failure to state a claim. (*Id.* at 5-6.) The Anguillan court denied both motions on October 21, 2014, and the Anguillan Court of

2

Appeals gave notice on November 5, 2014, that it would hear TT's application to appeal the decision. (*Id.*)

On August 29, 2014, TT filed the instant suit against ADC and Cuisinarts for breach of contract, alleging damages of $178,707. (Complaint ¶ 24.) TT also asserts claims for account stated and quantum meruit for payment of the work performed under the Agreements. (*Id*. ¶¶ 26-34, 39-42.) Defendants filed this motion on March 23, 2015.

## II.   Discussion

### A.   Claims Against Cuisinarts

TT moves to amend its complaint to replace Cuisinarts with Conair. (Dkt. No. 25 at 1, 9.) All parties agree that Cuisinarts is not a proper defendant because its legal existence terminated when it merged with Conair Corporation in 1993. *See* Fed. R. Civ. P. 17(b)(2) ("[A] corporation's capacity . . . to be sued is determined by the law under which it was organized."); *Chevron Corp. v. Salazar*, 807 F. Supp. 2d 189, 196 n.18 (S.D.N.Y. 2011) (citing 8 DEL. C. § 259) (explaining that, under Delaware law, a company's legal existence is terminated upon merger into another company). Accordingly, Cuisinarts lacks the capacity to be sued, and it is dismissed as a party.

Permission to amend a complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) (observing that, in cases where an answer has been filed, a motion made under Rule 21 is subject to the same standard as a motion pursuant to Rule 15(a)). This is a "permissive standard," and leave should be granted absent "any apparent or declared reason—such as undue delay, bad faith or . . . futility of amendment . . . ." *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Where it appears that granting

leave to amend is unlikely to be productive," it is within a district court's discretion to deny leave to amend. *Wrobel v. Cnty. of Erie*, 211 F. App'x 71, 72 (2d Cir. 2007) (summary order) (quoting *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996)).

TT's proposed amendment would be futile. The current Complaint alleges no facts and states no claim for relief against the parent company of ADC. (Dkt. No. 1; Dkt. No. 20 at 16.) Whether that parent company is Cuisinart or Conair or some other entity, TT identifies no allegation justifying its inclusion in the Complaint. Neither Cusinarts nor Conair is a party to the agreements between TT and ADC. TT offers no allegations in support of an alter ego theory of liability. Indeed, TT admits that it named Cuisinarts (and now seeks to name Conair) only because it negotiated at one point with a representative of ADC through that person's conair.com email address, and assumed that ADC was "in some way, related to the Conair Corporation and/or the Cuisinart Corp." (Dkt. No. 25 at 9.) Even substituting Conair for Cuisinart, the complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Amendment would accordingly be futile. *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

### B.     Claims Against ADC and the "Prior Pending Action" Doctrine

Defendants argue that the Court should dismiss or, in the alternative, stay the New York action in deference to the Anguilla action. Under the "prior pending action" doctrine, courts have "the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, No. 12-

cv-7249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts exercise that power "guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun Alliance*, 466 F.3d at 94; *see Chigirinskiy v. Panchenkova*, No. 14-cv-4410, 2015 WL 1454646, at * 12-13 (S.D.N.Y. Mar. 31, 2015) (Oetken, J.). Nonetheless, district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Royal & Sun Alliance*, 466 F.3d at 92 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (first alteration in original). *See generally* William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. (forthcoming 2015) (describing various approaches to "adjudicative comity").

To reconcile these considerations, "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Royal & Sun Alliance*, 466 F.3d at 93. The district court, however, does not search for such exceptional circumstances through a "mechanical checklist" of factors, but rather through a "careful balancing" in which "[n]o one factor is necessarily determinative." *Id.* at 94 (citations omitted). Those factors include (1) similarity of the parties and issues, (2) interests of judicial economy, (3) the order in which the actions were filed, (4) adequacy of the alternative forum, and (5) general considerations of fairness and prejudice to the parties. *See id.* at 94; *Ole Media Mgmt..*, 2013 WL 2531277, at *3.

### 1. Similarity of Parties and Issues

*Parties.* With Cuisinarts having been dismissed, the remaining parties in this case are TT and ADC. The same two parties are before the Anguillan court. The parties are therefore

identical, and this factor weighs in favor of staying the action.  Even if the Court granted TT leave to add Conair as a defendant, the inclusion of a parent company would not materially alter the analysis.  *See Credicom N.V. v. Colony Credicom L.P.*, No. 99-CV-10486 (MBM), 2000 WL 282968, at *2 (S.D.N.Y. Mar. 16, 2000).

*Issues*.  Both this action and the Anguillan action concern the same issue: whether TT performed or breached its duties under the Agreements.  Determination of that issue will govern whether TT is liable to ADC or whether TT is owed the balance of the contract price from ADC—notwithstanding the fact that, as TT observes, the Agreements contain no set-off clause.  The Anguillan court's ruling on the issue will likely be preclusive here.  Accordingly, this factor also weighs in favor of a stay.  *See Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013); *Ole Media Mgmt.,* 2013 WL 2531277 at *4.

### 2. Interests of Judicial Economy

Simultaneous litigation over identical issues would result in a waste of judicial resources.  *See Ole Media Mgmt,* 2013 WL 2531277, at *4 (reasoning that requiring two courts to be "engaged in the same task" would be a "waste of judicial resources"); *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, 10-cv-9078 (MHD), 2012 WL 4767180, at *11-12 (S.D.N.Y. Sept. 28, 2012) (explaining that simultaneous pursuit of parallel lawsuits that involve the same events and claimed loss would be "obviously inefficient"); *Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93–cv-6227 (MBM), 1994 WL 482114, at *2 (S.D.N.Y. Sept. 7, 1994) (observing that forcing a party to litigate the same issue in parallel cases would be a "waste of judicial resources").  The Anguillan court has already developed familiarity with the contracts and events in dispute, including by resolving a motion to dismiss for failure to state a claim.  Hearing TT's claims in New York would force this Court to unnecessarily expend judicial

resources duplicating the Anguillan court's work.  A stay of this action would advance the interests of judicial economy.

### 3. Order of Filing

This factor weighs slightly in favor of a stay.  The Anguillan action was filed on May 19, 2014, while this one was filed on August 29, 2014.  An appeal of the motion to dismiss in the Anguillan case has been pending since November 2014, though there is no suggestion that discovery has yet taken place.  Accordingly, the Anguillan action was first-filed and some progress has been made in that case.  *Cf. Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." (internal quotation marks omitted)).

### 4. Adequacy of the Alternative Forum

TT contends that New York is the proper forum but does not dispute that full and adequate relief is available in the Anguillan court for the claims it asserts.  *Cf. In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (finding Anguillan courts competent to adjudicate issues relating to Anguillan property).  Indeed, TT's claim involves a simple contract dispute, and it has been litigating in Anguilla.  Thus, Anguilla is an adequate forum for the claims presented here.

### 5. Other Considerations of Fairness and Prejudice

ADC, an Anguillan corporation, argues that it should not have to suffer the inconvenience of being haled into a New York court when the firm has no significant connection to New York and key witnesses are in Anguilla.  (Dkt. No. 20 at 14.)  In contrast, TT offers no explanation as to how it would be inconvenienced by litigation in Anguilla.  Rather, TT

contracted to perform extensive, multiyear business operations in Anguilla. The relative convenience and potential prejudice to the parties weigh in favor of a stay. *See Ole Mgmt.*, 2013 WL 2531277, at * 5.

Similarly, this litigation has a significant connection to Anguilla, and only a tenuous connection to the United States. *See Royal & Sun Alliance*, 466 F.3d at 94 (evaluating "the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction"). The only evident connections of this litigation to New York are TT's presence here, where it says it "performed the majority of its services," and the bare assertion in TT's opposition memorandum that ADC "conducted business" here. (Dkt. No. 25 at 8.) In contrast, ADC is an Anguillan corporation, the property at issue is in Anguilla, and TT contracted to perform services that required on-site visits to the property at issue in Anguilla, supervision of employees there, and interaction with local authorities. (Dkt. No. 20 at 14.) This factor also weighs toward a stay in favor of the Anguillan litigation.

### 6. Balance of Factors

The Court evaluates these factors through a "careful balancing," rather than a "mechanical checklist." *Royal & Sun Alliance*, 466 F.3d at 94. Taken together, the factors strongly support a stay while the Anguillan action is pending. A stay is a "lesser intrusion on the principle of obligatory jurisdiction" than a dismissal, allowing the Court to retain jurisdiction while ensuring that the Anguillan action results in a final judgment with preclusive effect here, such that the rights of both parties are protected. *Id.* at 96. Yet a stay is appropriate rather than allowing the case to proceed. The Anguillan case resolves virtually identical issues between identical parties, and this dispute has only a tenuous connection to the United States. *Cf. Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, No. 15-cv-3064 (JSR), 2015 WL 4940109,

at *3 (S.D.N.Y. Aug. 6, 2015). So long as the Anguillan action continues to proceed in a reasonable time, litigating in New York as well will seriously prejudice ADC and waste judicial resources. *See Ole Mgmt.*, 2013 WL 2531277, at * 6 (staying the case after consideration of the above factors); *Tarazi.*, 958 F. Supp. 2d at 439 (same); *Quanzhou Joerga Fashion Co.*, 2012 WL 4767180, at * 12 (same); *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09-cv-7966 (HB), 2009 WL 5125113, at * 6 (S.D.N.Y. Dec. 29, 2009) (same).

**III.   Conclusion**

For the foregoing reasons, Defendants' motion is GRANTED to the following extent:

1. Plaintiff's claim against Cuisinart is dismissed for failure to state a claim;

2. Plaintiff's request for leave to amend the Complaint is denied as futile;

3. this action is stayed pending resolution of the related Anguillan action.

The parties are directed update the Court as to the status of the Anguillan action within sixty days of the date of this order, and every sixty days thereafter, until that action is resolved. Should the Anguillan action render a final judgment, the parties are directed to notify the Court within thirty days.

The Clerk of Court is directed to close the motion at docket number 17, and to place this case on the suspense docket.

SO ORDERED.

Dated: November 13, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge